UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL HOBBS IMPORTS INC. and WINC, INC., | CASE NO. 1:21-CV-10597 |
| Plaintiffs, | |
| -v- | **COMPLAINT AND** |
| VERITY WINES LLC, ROSENTHAL & ROSENTHAL, INC., TRINITY BEVERAGE GROUP, LLC, HILL FLYNN, and MIKE BELL, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiffs Paul Hobbs Imports Inc. and Winc, Inc., by and through their attorneys, Dressel/Malikschmitt LLP, as and for their Complaint against Defendants Verity Wines LLC, Rosenthal & Rosenthal Inc., Trinity Beverage Group, LLC, Hill Flynn, and Mike Bell allege the following upon information and belief.

## NATURE OF THE ACTION

1.      Plaintiff Paul Hobbs Imports Inc. is, among other things, a wine importer. Plaintiff Winc, Inc. is, among other things, a wine producer. Verity Wines LLC purchased wine from Plaintiffs but never paid for it. Instead, Defendants conspired to have Defendant Verity Wines LLC "default" on its obligations only to have the same exact wine end up in the hands of a new company, operating under the same name and controlled by the same principals. At the end of the day, Defendants' scheme resulted in Plaintiffs receiving no payment for their wine, while Defendants have possession of the wine at essentially zero cost and have improperly benefited therefrom.

**THE PARTIES**

2.      Plaintiff Paul Hobbs Imports Inc. ("Paul Hobbs") is a Delaware corporation with its principal place of business in Sebastopol, California.

3.      Plaintiff Winc, Inc. ("Winc") is a Delaware corporation with its principal place of business in Santa Monica, California.

4.      Defendant Verity Wines LLC (d/b/a/ Verity Wine Partners) ("Verity") is a New York limited liability company with its principal place of business in New York. The citizenship of its members is unknown.

5.      Defendant Rosenthal & Rosenthal Inc. ("Rosenthal") is a New York corporation with its principal place of business in New York.

6.      Defendant Trinity Beverage Group, LLC ("Trinity") is a Delaware limited liability company with its principal place of business in New York. The citizenship of its members is unknown.

7.      Defendant Hill Flynn is an individual residing in the State of New York. He identifies as President and CEO of Verity Wines LLC.

8.      Defendant Mike Bell is an individual residing in the State of New York. Upon information and belief, Defendant Bell is Executive Vice President of Verity Wines LLC.

**JURISDICTION AND VENUE**

9.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) as this matter is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.      Jurisdiction is also proper pursuant to 28 U.S.C. §1331, as the action arises under the Constitution, laws, or treaties of the United States.

11.     Venue is proper pursuant to 28 U.S.C. §1391(b)(1) as a judicial district in which all defendants reside.

**FACTS**

12.     This is an action arising out of the sales of wines and a conspiracy to defraud Plaintiffs of the proceeds of those sales, and the wine itself.

13.     In the wine industry in the United States, there are essentially three tiers from production to the sale to the consumer: (1) the originator—*i.e.* the producer or importer; (2) the distributor; and (3) the retailer.

14.     Here, Plaintiffs Paul Hobbs and Winc were the first step of the process, an importer and a producer, respectively.

15.     Here, Defendant Verity was the second step of the process, the distributor for certain regional retailers, namely within New York and New Jersey as relevant here.

**A. The Sales at Issue**

   *i.    Paul Hobbs Sales to Defendant Verity*

16.     Beginning in approximately mid-2013, Plaintiff Paul Hobbs began selling wines to Defendant Verity for resale in the New York and New Jersey markets.

17.     These sales were made pursuant to a contract, the terms of which provide for payment for the delivery of wine F.O.B. to a pre-arranged shipping point.

18.     The two (2) Paul Hobbs sales at issue in the action occurred in January and March of 2021, respectively. Those two (2) sales specifically involved 2,286 cases of wine. The sum total of those invoices amounted to nearly $240,000.

19.     Pursuant to those invoices, payment is due "Net 90 Days."

Case 1:21-cv-10597   Document 1   Filed 12/10/21   Page 4 of 19

20.     One payment in an amount of $20,000 was received by Paul Hobbs on April 9, 2021.

21.     After inquiring about the account balance on April 14, 2021, Paul Hobbs was directed to speak with Molly Jobe—a "Senior Manager of Restructuring and Dispute Resolution Services" at Cohn Reznick LLP.

22.     Indeed, on April 15, 2021, Paul Hobbs was assured by Molly Jobe that a subsequent promised payment "wasn't possible," but that Defendant "Hill and his team are working to put something in front of you to outline a path forward in regard to the outstanding and upcoming balance."

23.     At the same time, upon information and belief, Defendant Rosenthal & Rosenthal sent Defendants Verity, Bell and Flynn a letter indicating that, "as secured party" it was planning "to sell substantially all" of Defendant Verity's assets "in one or more private sales on or after May 3, 2021."

24.     Plaintiff Paul Hobbs was not made aware of this letter at the time.

25.     Moreover, notwithstanding the forgoing, on May 4, 2021, Defendant Hill indicated that he was continuing to work on remitting the sum owed to Paul Hobbs.

26.     It was not until August 4, 2021 when Paul Hobbs was actually informed—again by Molly Jobe of Cohn Reznick LLP—that Verity was formally being wound down after an Article 9 foreclosure that had been apparently effectuated two months earlier, on June 2, 2021.

27.     Upon information and belief, this purported restructuring was merely a scheme to avoid Defendant Verity's payment obligations to its suppliers, including Plaintiffs Paul Hobbs and Winc.

28.     Upon information and belief, all named defendants conspired in this scheme for their mutual benefit.

29.     The invoices at issue, and others, were never paid as part of this intentional scheme.

30.     What is more, upon information and belief, Defendant Trinity Beverage Group continues to possess Paul Hobbs's wine despite having never paid for it.

ii.     *Winc Sales to Defendant Verity*

31.     Beginning in approximately 2015, Plaintiff Winc began selling wines to Defendant Verity for resale in the New York and New Jersey markets.

32.     These sales were made pursuant to a contract, the terms of which provide for payment for the delivery of wine F.O.B. to a pre-arranged shipping point.

33.     The Winc sales at issue in the action occurred across the first four months of 2021. Those sales amounted to approximately $456,808.86 worth of inventory, only a small fraction of which was ever paid for.

34.     Indeed, by March of 2021, Defendant Winc's account was carrying a significant past due balance. As such, on March 4, 2021, a representative for Winc inquired to Verity—as well as Ms. Jobe—about that past due amount. Verity promised to pay and requested a payment plan. Pursuant to a subsequent March 8, 2021 phone call with the same, a payment plan was formalized.

35.     At the same time, upon information and belief, Defendant Rosenthal & Rosenthal sent Defendants Verity, Bell and Flynn a letter indicating that, "as secured party" it was planning "to sell substantially all" of Defendant Verity's assets "in one or more private sales on or after May 3, 2021."

36.     Plaintiff Winc was not made aware of this letter at the time.

37.     Moreover, notwithstanding the foregoing, on May 18, 2021, Defendant Flynn admitted that he had "tried everyone's patience to the limits," and assured Winc that it was "right in the end game of getting the financing done" in order to pay its debts to Winc.

38.     It was not until on or about June 3, 2021 that Ms. Jobe finally represented to Winc that "Verity has gone out of business" that its assets had been seized, and that there was "no money to pay trade creditors or other unsecured creditors."

39.     On or about June 4, 2021, a phone call was made to Defendant Verity, and the answering representative indicated that Defendant Verity was, in fact, still in business.

40.     Upon information and belief, this purported restructuring was merely a scheme to avoid Defendant Verity's payment obligations to its suppliers, including Plaintiffs Paul Hobbs and Winc.

41.     Upon information and belief, all named defendants conspired in this scheme for their mutual benefit.

42.     The invoices at issue, and others, were never paid as part of this intentional scheme.

43.     What is more, upon information and belief, Defendant Trinity Beverage Group continues to possess Winc's wine despite having never paid for it.

**B.  Verity Wines Allegedly Winds Up**

44.     Plaintiffs Paul Hobbs and Winc repeatedly requested the money they were due under the aforementioned valid contracts and were never fully paid for their wine.

45. Instead, upon information and belief, Defendant Rosenthal & Rosenthal, under the guise of a secured creditor, purported to take legal possession of the wine at issue in or around May 2021 as part of Defendant Verity's alleged default as an alleged secured creditor.

46. Defendant Rosenthal then transferred ownership of Plaintiffs' wine to Defendant Trinity.

47. Upon information and belief, this alleged default and subsequent possession of Plaintiffs' wine was part of a scheme for Defendants to misappropriate the wine for their own benefit at essentially no cost to themselves.

48. Indeed, Defendant Rosenthal & Rosenthal never intended to take physical possession of the wine, nor to resell the wine to any third party. Instead, Defendants intended that the wine would be immediately returned to Defendant Verity—under a slightly modified moniker, but with essentially the same corporate form—for a mere fraction of its market value.

49. According to Kevin Gluntz of FisherBroyles LLP, attorney for Defendant Trinity, Defendant Trinity was merely "an entity that simply purchased assets from Verity's lender (under UCC Article 9) after Verity's lender repossessed those assets from Verity."

50. Upon information and belief, this representation was false.

51. Upon information and belief, there was no proper Article 9 sale.

52. Indeed, upon information and belief, there was no attempt at any kind of commercially reasonable resale of the wine that Defendant Rosenthal & Rosenthal allegedly took possession of.

53. On June 22, 2021, Mr. Gluntz reached out to Paul Hobbs with an exploding offer to repurchase its own wine at the original purchase price. Paul Hobbs responded, requesting proof of legal ownership and title transfer, but was rebuffed.

54.     Counsel further informed Paul Hobbs that "[t]he buyer of the assets of Verity Wines LLC and Domaine Select Wine & Spirits has chosen to use part of the Verity name in their new company name but it is a different entity."

55.     Upon information and belief, this representation was false. The aforementioned "different entity"—Trinity—is substantially the same enterprise as Verity.

56.     Indeed, Trinity is owned by largely the same members as Verity, including Defendants Hill Flynn and Mike Bell.

57.     Upon further information and belief, Trinity and Rosenthal did not take possession of the wine as part of a legitimate and proper Article 9 foreclosure, despite representations that such a proper foreclosure had taken place.

58.     In or around June 2021, Trinity formally announced that it had acquired and "recapitalized" the assets of Verity.

59.     Indeed, Defendant Trinity Beverage Group, LLC still holds itself out to the public as Verity Wines and does business under that name.

60.     In fact, at the time the invoice was entered into, Defendant Verity Wines LLC had no intention to perform upon its promise to pay for the wine. It intended to default on its obligations and allow the wines to be passed to a new entity, operating the same business, with the aid of Defendant Rosenthal & Rosenthal, Inc.

61.     As principals at Defendant Verity, Defendants Hill Flynn and Mike Bell were the masterminds of this conspiracy to defraud Paul Hobbs and Winc of its wine.

62.     Indeed, Defendants Flynn and Bell made continuous representations regarding repayment to Plaintiffs that they knew were false as they never intended to pay for the wine Defendant Verity had purchased.

63.     Instead, Defendants Flynn and Bell conspired with Defendant Rosenthal & Rosenthal to see that Defendant Verity's purchases would be possessed by Defendant Rosenthal & Rosenthal under a sham UCC Art. 9 foreclosure, and to ultimately result in the return of the wine to Defendant Verity under a different name, all for little or no cost and to avoid paying for the wine it had purchased.

64.     Upon information and belief, Defendant Rosenthal & Rosenthal was induced to participate in this scheme for pecuniary benefit.

65.     Plaintiffs Paul Hobbs and Winc have repeatedly requested the money they were due under the aforementioned valid contracts and have never been fully paid for their wine to date.

66.     Upon information and belief, this same scheme has been perpetrated against numerous wine importers and producers.

## COUNT I: BREACH OF CONTRACT
### (Against Defendant Verity Wines LLC)

67.     Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

68.     Plaintiffs both entered into contracts for the purchase of wine by Defendant Verity.

69.     According to the relevant invoices, Defendant Verity Wines LLC agreed to purchase the wine at issue for a sum certain.

70.     Plaintiffs fulfilled their promised terms of the contracts by providing said wine as according to the contractual terms.

71.     Defendant Verity Wines LLC failed to pay the promised amounts, thereby breaching the parties' agreements.

72.     Plaintiffs have been harmed by this breach, by virtue of the monetary loss they

has suffered, in an amount to be proven at trial.

**COUNT II: UNJUST ENRICHMENT**
(Against Defendants Verity Wines LLC, Trinity Beverage Group, LLC,
Hill Flynn and Mike Bell)

73.     Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if

fully set forth herein.

74.     Plaintiffs both entered into contracts for the purchase of wine by Defendant

Verity.

75.     Plaintiffs fulfilled their promised terms of those contracts by providing said wine

as according to the contractual terms.

76.     Defendant Verity Wines LLC failed to pay the amount it promised to pay for

those wines.

77.     Defendant Verity Wines LLC instead purportedly used the wine to satisfy its

obligations to its creditors.

78.     Defendants Hill Flynn and Mike Bell benefitted from the use of the wine to

satisfy debts owed by Verity Wines LLC to its creditors, as well as debts Defendants' Flynn and

Bell were personally responsible for.

79.     Defendants Verity Wines LLC, Hill Flynn, and Mike Bell all received these

benefits at Plaintiffs' expense.

80.     Defendants Trinity Beverage Group, LLC, Hill Flynn and Mike Bell further

benefited at Plaintiffs' expense by reacquiring the wine from their creditor and posting the wine

for re-sale to the public.

## COUNT III: PROMISORY ESTOPPEL
(Against Defendant Verity Wines LLC)

81.     Plaintiffs repeat and reallege the preceding paragraphs in this Complaint as if fully set forth herein.

82.     Defendant Verity Wines LLC promised to pay for the wines that Plaintiffs shipped to it, and repeatedly reiterated those promises to Plaintiffs when payment was demanded.

83.     Defendant Verity Wines LLC did not tender this payment.

84.     Plaintiffs reasonably relied upon the promises to pay for the wines shipped, and were induced to ship additional wines based upon those promises.

85.     Defendant Verity Wines LLC's failure to tender the promised payment harmed Plaintiffs, as they would not have shipped the original wines, or subsequent deliveries, absent the repeated promises to pay.

## COUNT IV: FRAUD
(Against Defendants Verity Wines LLC, Hill Flynn and Mike Bell)

86.     Plaintiffs repeat and reallege the preceding paragraphs in this Complaint as if fully set forth herein.

87.     Defendant Verity Wines LLC promised to pay the invoiced amount for the wines shipped to Plaintiffs. Those statements were made by Defendants Flynn and Bell.

88.     Defendant Verity Wines LLC did not, in fact, intend to pay for the wine at the time it entered into the agreements to receive the wines. It instead intended to not pay for the wine, have its co-conspirator Defendant Rosenthal & Rosenthal Inc. purport to collect on the wine as collateral, and then transfer the wine to Defendant Trinity Beverage Group, LLC

(effectively the same entity as Verity Wines LLC) where the wine could be resold without it having been paid for.

89.     Defendant Verity Wines LLC intended for Plaintiffs to rely on its repeated statements that it would pay for the wine at issue, statements that Defendant Verity Wines LLC knew were false at the time.

90.     Plaintiffs were harmed by Defendant Verity Wines LLC's false statements that it would pay for the wine at issue, as they would not have tendered repeated shipments of wine to Defendant Verity otherwise.

### COUNT V: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
(Against Defendant Rosenthal & Rosenthal, Inc.)

91.     Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

92.     Defendant Rosenthal & Rosenthal, Inc. knew of Plaintiffs' contractual relationship with Defendant Verity Wines LLC.

93.     Defendant Rosenthal & Rosenthal, Inc. sought to procure Defendant Verity Wines LLC's breach of those agreements in order to further the scheme to transfer the wine at issue to another party.

94.     Defendant Rosenthal & Rosenthal, Inc. procured Defendant Verity Wines LLC's breach by informing them that Defendant Rosenthal & Rosenthal Inc. would transfer the wine to another entity controlled by Defendants Flynn and Bell, who could then resell the wine without having paid for it or having paid substantially less that it was worth.

95.     Defendant Verity Wines LLC did in fact breach its contract with Plaintiffs.

96.     These breaches of contract were a result of Defendant Rosenthal & Rosenthal, Inc.'s inducements to breach.

97.     Plaintiffs have been harmed by Defendant Rosenthal & Rosenthal, Inc.'s tortious interference, as instead of paying for the wine, per the terms of the invoices, Defendant Verity Wines LLC transferred the wine to Rosenthal & Rosenthal, Inc. who then transferred the wine back to Verity's principals and Defendant Trinity Beverage Group LLC.

### COUNT VI: CONVERSION
(Against All Defendants)

98.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

99.     Plaintiffs both entered into contracts for the purchase of wine by Defendant Verity.

100.     Plaintiffs fulfilled their promised terms of the contracts by providing said wine as according to the contractual terms.

101.     Defendant Verity Wines LLC failed to pay its invoices under those contracts, and instead unlawfully retained possession of the wine.

102.     Defendant Rosenthal & Rosenthal, Inc. then took possession of the wine, purportedly as collateral for loans made to Verity Wines LLC.

103.     In fact, Defendant Rosenthal & Rosenthal, Inc. intended to aid the other Defendants in taking unlawful possession of the wine and was not legitimately seeking to collect on any outstanding debts.

104.     Indeed, Defendant Rosenthal & Rosenthal, Inc. transferred the wine back to Verity's principals, albeit now styled as a new entity, Defendant Trinity Beverage Group, LLC.

105.     Defendants Flynn and Hill took ultimate possession of the wine to sell under that new Trinity label.

106.    Plaintiffs requested return of the unpaid for wine, however, Defendants not only have refused to return the wine, but have requested that Plaintiff Paul Hobbs actually pay for its own wine to be returned to it.

### COUNT VII: FEDERAL CIVIL RICO, 18 U.S.C. § 1962(c)
(Against All Defendants)

107.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

108.    Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

109.    Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

110.    The Enterprise: Defendants acted in a concerted effort to affect interstate commerce. Defendants worked together to purchase wine from producers and importers, with the intent not to pay for the wine. Defendants did this by purchasing the wine from importers and producers such as Plaintiffs Paul Hobbs and Winc. Verity, the purchaser, then transferred the wine to Defendant Rosenthal & Rosenthal, Inc. (purportedly in satisfaction of a secured loan) who would subsequently transfer the same wine back to another business, Defendant Trinity Beverage Group LLC, owned and operated by the same individuals, Defendants Flynn and Bell, who operated Defendant Verity Wines LLC. Defendants used this same scheme to defraud numerous wine companies—including Plaintiffs—and transfer millions of dollars of inventory to themselves free of charge.

111.    Pattern of Racketeering Activity: Defendants did knowingly, willfully, and unlawfully conduct or participate in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c). Defendants had the specific intent to engage in the substantive RICO violation alleged herein, namely to promise payment for wine with the intent

not to make payment, fraudulently transfer the wine in purported satisfaction of secured loans, and then further fraudulently transfer the wine back to the original purchasers who would then resell wine without having paid for it.

112.    Predicate Acts: Defendants engaged in the predicate acts of mail and wire fraud. Defendants used the mail and wire systems to knowingly transmit fraudulent statements, including statements that Defendant Verity Wines LLC intended to pay for the wine at issue, when it knew at the time it had no intention of paying, as well as statements that the wine had been transferred in a bone fide sale of collateral to satisfy a secured transaction when it had not.

113.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering have been continuous. There was repeated conduct during a period of time beginning in approximately 2019 and continuing to present, and there is a continued threat of repetition of such conduct.

114.    Plaintiff specifically alleges that Defendants participated in the operation and management of the racketeering scheme by overseeing the commission of multiple acts of racketeering as described below.

115.    Wire Fraud. Defendants conspired to use the wire system to communicate to wine growers and importers that they would pay for wine produced or imported by those companies. In fact, at the time those statements were made Defendants knew that they had no intention to pay for the wine, but through their racketeering scheme, would seize the wine and sell it without having paid for it.

116.    Wire Fraud. When wine producers and importers like Plaintiffs inquired about payment for their wine, they were told that the wine had been transferred as collateral to a

secured transaction and that the wine had been sold through a bone fide sale. In fact, Defendants conspired to effectively launder the wine from one Defendant owned by Defendants Flynn and Bell to another Defendant owned by Defendants Flynn and Bell. There was no bona fide sale to a second purchaser, as Defendants told victims like Plaintiffs, but instead a conspiracy to take wine without paying for it, while pocketing the proceeds from its resale.

117.    Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud Plaintiffs or to obtain valuable commodities from Plaintiffs by means of false or fraudulent pretenses, representations, or promises. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs and signals. The acts of Defendants set forth above were done with knowledge that the use of the mails and wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

118.    Defendants carried out their scheme in different states and could not have done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires. In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiffs. These communications were typically transmitted by wire (i.e., electronically) and/or through the United States mails or private or commercial carriers.

119.    Defendants' shared objective was, and is, to obtain wine essentially free of charge which they can then resell on the retail market for almost 100% profit.

120.     Plaintiffs reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and Plaintiffs have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

121.     <u>Continuity of Conduct</u>: Defendants' violations of state and federal law, as set forth herein, each of which directly and proximately injured Plaintiffs and other victims, constituted a course of conduct spanning a period from 2019 to the present, which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were part of a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5).

122.     Upon information and belief, Defendants have conducted and/or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity as defined herein, violation of 18 U.S.C. § 1962(c).

123.     These acts were done intentionally and knowingly, with the specific intent to advance Defendants' scheme or artifice.

124.     Defendants' shared objective was to obtain wine inventory at zero cost, which could then be resold for virtually 100% profit, all at producers' and importers' expense.

**COUNT VIII: CONSPIRACY TO VIOLATE FEDERAL CIVIL RICO,**
**18 U.S.C. § 1962(d)**
(Against All Defendants)

125.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

126.     In violation of 18 U.S.C. § 1962(d) Defendants knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged above.

127.     The conspiracy commenced at least as early as 2019 and is ongoing.

128.    The conspiracy's purpose was to obtain wine inventory at zero cost, which could then be resold for virtually 100% profit, all at producers' and importers' expense.

129.    Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included misleading Plaintiffs regarding Defendants Verity Wines LLC's intention to pay for inventory and misleading Plaintiffs regarding the bona fide nature of the sale of Verity Wines LLC's inventory by Defendant Rosenthal & Rosenthal Inc. to Defendant Trinity Beverage Group LLC.

130.    Even if some of the Defendants did not agree to harm Plaintiffs specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiffs was a reasonably foreseeable, and indeed intended, consequence of Defendants' actions.

131.    Plaintiffs have been injured and continue to be injured in its business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d). The unlawful acts of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs in their business or property. Plaintiffs seek an award of damages in compensation for, among other things, the hundreds of thousands of dollars of wine that Defendants essentially stole from Plaintiffs.

132.    Plaintiffs further seek an award of three times the damages they sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against Defendants (i) in an amount to be determined at trial; (ii) statutory interest; (iii) compensatory,

exemplary and punitive damages, and (iv) such other relief in Plaintiffs' favor as this Court

deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury on issues so triable.

Dated: Somerville, New Jersey
December 10, 2021

/s/ Christopher M. Malikschmitt
Christopher M. Malikschmitt
DRESSEL/MALIKSCHMITT LLP
11 E. Cliff Street
Somerville, New Jersey 08875
(848) 202-9323
chris@dresselmalikschmitt.com
Attorneys for Plaintiff