UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
PAUL HOBBS IMPORTS INC. *et al.*,                                 :
                                                                  :
                                    Plaintiffs,                   :
                                                                  :            21 Civ. 10597 (JPC)
                     -v-                                          :
                                                                  :            OPINION AND ORDER
VERITY WINES LLC *et al.*,                                        :
                                                                  :
                                    Defendants.                   :
                                                                  :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs Paul Hobbs Imports Inc. ("Paul Hobbs") and Winc, Inc. ("Winc") allege that

Defendants—two wine distributors, their two owners, and the secured lender to one distributor—

worked together to acquire hundreds of thousands of dollars' worth of wine from Plaintiffs without

payment. *See generally* Dkt. 1 ("Compl."). Because of this conduct, Plaintiffs claim, Defendants

are liable under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1961-1968, *see* Compl. ¶¶ 107-32, and under state tort and contract law, *see id.* ¶¶ 67-

106. Defendants Trinity Beverage Group, LLC ("Trinity") and Mike Bell (together with Trinity,

the "Trinity Defendants") and Defendant Rosenthal & Rosenthal, Inc. ("Rosenthal"; together with

the Trinity Defendants, the "Moving Defendants") have moved to dismiss the Complaint. Dkts.

27, 30. The Moving Defendants argue that the Complaint fails to adequately plead either a

substantive RICO violation or a conspiracy to violate RICO. Dkt. 28 ("Trinity Br.") at 8-17; Dkt.

31 ("Rosenthal Br.") at 7-14. Given that the Court lacks original jurisdiction over the state law

claims because the parties are not fully diverse, *see* Dkt. 29, the Moving Defendants further argue

that the Court should dismiss those claims for lack of subject matter jurisdiction. Trinity Br. at

17-18; Rosenthal Br. at 17. In the alternative, the Moving Defendants also argue that the

Complaint inadequately pleads any claims under state law. Trinity Br. at 18-21; Rosenthal Br. at 14-16. The remaining Defendants, Verity Wines, LLC ("Verity") and Hill Flynn, have failed to appear. Consequently, also pending is Plaintiffs' motion for a default judgment against them. Dkt. 43.

For reasons that follow, the Court agrees that the Complaint fails to adequately plead either a substantive civil RICO violation or a civil RICO conspiracy. And because the inadequacies in pleading affect the RICO claims brought against all five Defendants, including those who have not appeared, Plaintiffs' RICO claims are dismissed in their entirety, and Plaintiffs' motion for default judgment is denied with respect to the RICO claims brought against Verity and Flynn. Furthermore, given that this litigation has not progressed past its early stages, there would be no justification for retaining supplemental jurisdiction over the state law claims following the dismissal of the only claims over which the Court has original jurisdiction. Plaintiffs' state law claims therefore are dismissed without prejudice so that they may be re-filed in state court. Nonetheless, because Plaintiffs have not yet been given an opportunity to amend their Complaint, and because at this stage of the litigation permitting amendment would not prejudice Defendants, Plaintiffs are granted leave to amend the Complaint if they are able to correct the pleading deficiencies identified in this Opinion and Order.

## I. Background

### A. Facts[1]

This case arises out of Verity's purchases of wine in early 2021 from each of the two Plaintiffs. Paul Hobbs is a wine importer and Winc is a wine producer, Compl. ¶ 14, while Verity

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

operated as a wine distributor with Flynn serving as its President and Chief Executive Officer and Bell as its Executive Vice President, *id.* ¶¶ 7, 8, 15.  For multiple years beginning in the mid-2010s, Paul Hobbs and Winc each sold wine to Verity for distribution to retailers in the New York and New Jersey markets.  *Id.* ¶¶ 16, 31.  In January and March 2021, Paul Hobbs sold Verity a total of 2,286 cases of wine for just under $240,000 in two separate sales, *id.* ¶ 18, and over the first four months of 2021, Winc sold Verity approximately $456,808.86 worth of wine in a series of sales, *id.* ¶ 33.  Verity made initial payments towards the amounts owed for those purchases.  *Id.* ¶¶ 20, 33.  When the balances due were not paid on time, Verity's representatives, including Flynn, informed Plaintiffs that Verity was working to develop a payment plan that would allow it to discharge its remaining debts.  *Id.* ¶¶ 21-22, 25, 34, 37.  Nonetheless, as alleged, Verity, Flynn, and Bell had no intention actually to remit the funds owed to Plaintiffs in exchange for the wine they sold, *id.* ¶¶ 60-62, and Verity has failed to pay the substantial majority of that amount, *id.* ¶¶ 20, 29, 33, 42, 44.  Instead, Paul Hobbs and Winc were informed, in August and June 2021, respectively, that Verity's assets had been sold in a foreclosure sale under Article 9 of the Uniform Commercial Code, that no assets remained to pay unsecured creditors, and that consequently Verity would be formally wound down.  *Id.* ¶¶ 26, 38.

In fact, Plaintiffs allege, they were the victims of a scheme through which Verity's owners, Flynn and Bell, could acquire wine without payment.  At some point during the spring of 2021, Rosenthal sent Verity, Bell, and Flynn a letter in which it represented that "as secured party" it would "sell substantially all" of Verity's assets "in one or more private sales on or after May 3, 2021."  *Id.* ¶¶ 23, 35.  Subsequently, Rosenthal purported to take legal possession, in its capacity as Verity's secured creditor, of the wine Plaintiffs had sold to Verity.  *Id.* ¶ 45.  Rosenthal then transferred ownership of that wine to Trinity.  *Id.* ¶ 46.  However, as alleged, that transfer did not occur either pursuant to a commercially reasonable sale or in accordance with Article 9 of the

Uniform Commercial Code. *Id.* ¶¶ 51-52. Instead, since Verity and Trinity share many of the same owners, including both Bell and Flynn, *id.* ¶ 56, the transfer of ownership of the wine to Trinity, which Rosenthal allegedly facilitated for "pecuniary benefit," allowed those owners to retain control of the wine sold by Plaintiffs. *Id.* ¶¶ 60-64. Meanwhile, Plaintiffs received only an unenforceable right to payment from Verity, a defunct corporate entity with no remaining assets. *Id.* ¶ 38. Indeed, although Trinity is a distinct legal entity from Verity, the two are allegedly "substantially the same enterprise," *id.* ¶ 55, and Trinity not only took possession of Verity's wine but also allegedly continues to "hold[] itself out to the public as Verity Wines and does business under that name," *id.* ¶ 59. Furthermore, while Defendants deprived Plaintiffs only of the wine they sold Verity during the first four months of 2021, Plaintiffs allege that "this same scheme has been perpetrated against numerous wine importers and producers." *Id.* ¶ 66.

**B.  Procedural History**

Plaintiffs filed their Complaint on December 10, 2021. It alleges eight different counts against various combinations of Defendants. Compl. ¶¶ 67-132. The seventh and eighth sound in federal law: Count VII alleges that all Defendants committed a substantive RICO violation, as prohibited by 18 U.S.C. § 1962(c), *see id.* ¶¶ 107-124, and Count VIII alleges that all Defendants conspired to violate subsection 1962(c), as prohibited by 18 U.S.C. § 1962(d), *see id.* ¶¶ 125-132. The six remaining counts all sound in state law. Count I alleges that Verity breached contracts with each Plaintiff for the purchase of wine. *Id.* ¶¶ 67-72. Count II alleges that all Defendants other than Rosenthal were unjustly enriched by Verity's receipt, without payment, of Plaintiffs' wine. *Id.* ¶¶ 73-80. Counts III and IV allege that promises made on behalf of Verity to pay for the wine sold by Plaintiffs establish, respectively, that Verity is liable to Plaintiffs under promissory estoppel, *id.* ¶¶ 81-85, and that Verity as well as Bell and Flynn are liable to Plaintiffs for fraud, *id.* ¶¶ 86-90. Count V alleges that Rosenthal is liable for tortious interference with

4

business relations in virtue of having procured Verity's breach of its contracts with Plaintiffs. *Id.* ¶¶ 91-97. Finally, Count VI alleges that all Defendants are liable for converting wine that belonged to Plaintiffs. *Id.* ¶¶ 98-106.

Although all five Defendants have been served, *see* Dkts. 16-18, 21-22, only Rosenthal, Trinity, and Bell have appeared, *see* Dkts. 14, 25. Following the Court's adoption of a briefing schedule during a conference on February 23, 2022, Minute Entry for Feb. 23, 2022, Rosenthal and the Trinity Defendants filed separate motions to dismiss on March 16, 2022, Dkts. 27, 30. Those motions each argue that the Complaint fails to state a claim with respect to both the substantive RICO count and the RICO conspiracy count, Trinity Br. at 6-17; Rosenthal Br. at 7-14, which were each pled against all Defendants, Compl. ¶¶ 107-132. Because Trinity is a citizen of Delaware, Dkt. 29; Trinity Br. at 18, as are Paul Hobbs and Winc, Compl. ¶¶ 2-3, the remaining state law claims lie outside this Court's diversity jurisdiction, *see* 28 U.S.C. § 1332(a). The Trinity Defendants therefore argue that if the federal RICO claims are dismissed, the Court would lack subject matter jurisdiction over the state law claims. Trinity Br. at 17-18. In the alternative, the Trinity Defendants argue that the fraud count must be dismissed as to Bell, *id.* at 19, and the unjust enrichment and conversion claims must be dismissed as to Bell and Trinity, *id.* at 20-21, each for failing to state a claim. While Rosenthal agrees that if the RICO claims are dismissed, the Court would lack jurisdiction over the remaining state law claims, it argues that the Court nonetheless should exercise jurisdiction in the interest of judicial economy. Rosenthal Br. at 17. And on the merits, Rosenthal argues that the Complaint fails to state a claim with respect to the two counts in the Complaint pled against Rosenthal—namely, the claims for tortious interference with business relations and for conversion—and thus that those counts should be dismissed as well. *Id.* at 14-16. Plaintiffs separately opposed each motion to dismiss on April 6, 2022, Dkt. 37 ("Pl. Opp. to

Rosenthal"); Dkt. 38 ("Pl. Opp. to Trinity"), and Rosenthal and the Trinity Defendants each filed reply briefs on April 20, 2022, Dkts. 41-42.

## II.  Legal Standards

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y.  Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

A court must dismiss a claim for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *see also Liranzo v. United States*, 690 F.3d 78, 83-84 (2d Cir. 2012) (applying this rule where a party moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) five days before trial).  Courts take the uncontroverted facts of the complaint as true, but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration in original) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

### III.  Discussion

Because at least some of the Moving Defendants' arguments for dismissing Plaintiffs' state law claims depend on the Court's resolution of their motions to dismiss Plaintiffs' RICO claims, the Court will first analyze the latter before turning to the former.

### A.  RICO Claims Against Rosenthal and the Trinity Defendants

The seventh and eighth counts of the Complaint arise under RICO:  Count VII alleges that all Defendants committed a substantive RICO violation, as prohibited by 18 U.S.C. § 1962(c), *see* Compl. ¶¶ 107-124, and Count VIII alleges that all Defendants conspired to violate RICO, as prohibited by 18 U.S.C. § 1962(d), *see id.* ¶¶ 125-132.  The elements of a private cause of action under RICO are: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citation omitted).  The Moving Defendants do not dispute that Plaintiffs allege an injury to their business or property by claiming that they were not paid for the wine they sold, nor do the Moving Defendants dispute that the Complaint alleges that injury to have been caused by Defendants' conduct.  Rather, the Moving Defendants deny that either Count VII or Count VIII adequately alleges a violation of the relevant subsection of 18 U.S.C. § 1962—respectively, subsection (c) or subsection (d).  Trinity Br. at 6-17; Rosenthal Br. at 7-14.  The Court agrees that the allegations in the Complaint fail to state a violation of either 18 U.S.C. § 1962(c) or § 1962(d).  Therefore, Counts VII and VIII of the Complaint must be dismissed against the Moving Defendants.

#### 1.  Subsection 1962(c)

Count VII of the Complaint alleges that "[e]ach Defendant violated 18 U.S.C. § 1962(c)." Compl. ¶ 109.  Under that provision, it is prohibited for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Thus, "[t]o establish a violation of 18 U.S.C. § 1962(c) . . . a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *DeFalco*, 244 F.3d at 306 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  These requirements, furthermore, "must be established as to each individual defendant."  *Id.*  The Moving Defendants argue that the Complaint fails to adequately plead that they engaged in racketeering activity, Trinity Br. at 8-10; Rosenthal Br. at 7-10, that the Complaint fails to adequately allege the existence of an enterprise, Trinity Br. at 13-15; Rosenthal Br. at 10-11, and that even were the racketeering activity adequately pled, it would not constitute a "pattern," Trinity Br. at 11-13; Rosenthal Br. at 11-13.  The Moving Defendants are correct:  the Complaint inadequately pleads a subsection 1962(c) violation in each of these three respects.

### a.  Racketeering Activity

RICO defines "racketeering activity" to mean "any act or threat involving" an enumerated list of offenses "which is chargeable under State law and punishable by imprisonment for more than one year" or "any act which is indictable under" an enumerated list of "provisions of title 18, United States Code."  18 U.S.C. § 1961(1).  Thus, to allege a violation of subsection 1962(c), a complaint must adequately plead that the defendants engaged in "predicate acts" constituting racketeering activity—that is, state or federal offenses enumerated in 18 U.S.C. § 1961(1).  Since Plaintiffs allege that "Defendants engaged in the predicate acts of mail and wire fraud," Compl. ¶ 112, their Complaint must adequately plead that Defendants committed those offenses.

In most cases, the Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Allegations of fraud, however, must meet a more stringent standard:  "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Because the

predicate acts that the Complaint alleges Defendants performed were offenses of fraud, the Complaint must therefore "state with particularity the circumstances constituting" the fraud that the Moving Defendants allegedly committed. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (applying the pleading standard of Rule 9(b) to alleged RICO predicate acts of mail and wire fraud); *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) ("[A]ll allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."). In particular, to adequately plead mail and wire fraud as predicate acts, a complaint must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (citation omitted). Those misrepresentations must have been "material to the harm caused to the victim." *Id.* at 169. Furthermore, a complaint "must allege facts that give rise to a strong inference of fraudulent intent." *Id.* at 173 (citation omitted).

In order to adequately plead the commission of mail or wire fraud, a complaint must not only provide the additional information required by the heightened pleading standard of Rule 9(b); it must further connect that information to each defendant allegedly liable for a RICO violation. Each element of a violation of subsection 1962(c) "must be established as to each individual defendant." *DeFalco*, 244 F.3d at 306. Thus, for a subsection 1962(c) violation to be adequately pled against a particular defendant, the complaint must allege that that defendant performed predicate acts constituting racketeering activity. *Id.* ("[A] plaintiff must establish that a defendant, through the commission of . . . acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise . . . ."). To be sure, the actual utterance of a falsehood or misrepresentation is not an essential element of mail or wire fraud, *see United States v. Shellef*,

507 F.3d 82, 107 (2d Cir. 2007), and thus "plaintiffs need not allege that each defendant itself made a misrepresentation," *Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 492 (S.D.N.Y. 2020).  Instead, since "[t]he gravamen of the offense is the scheme to defraud," *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 657 (2d Cir. 2016) (citation and internal quotation marks omitted), a complaint adequately alleges each defendant's commission of mail or wire fraud "as long as [it] allege[s] sufficient facts showing each defendant's knowing or intentional participation in the alleged scheme to defraud."  *Williams*, 443 F. Supp. 3d at 492; *accord S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) ("A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme . . . .").  Furthermore, since Rule 9(b) requires allegations of fraudulent intent to be supported by allegations of "facts that give rise to a strong inference of fraudulent intent," *Moore*, 189 F.3d at 173 (citation omitted), the Complaint must "plead facts sufficient to raise a strong inference of fraudulent intent on the part of each defendant."  *Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 808 F. Supp. 213, 230 (S.D.N.Y. 1992).

The Complaint alleges that Defendants

used the mail and wire systems to knowingly transmit fraudulent statements, including statements that Defendant Verity Wines LLC intended to pay for the wine at issue, when it knew at the time it had no intention of paying, as well as statements that the wine had been transferred in a bone fide sale of collateral to satisfy a secured transaction when it had not.

Compl. ¶ 112.  And it identifies a number of allegedly fraudulent statements employed in this scheme: a statement from Molly Jobe[2] to Paul Hobbs on April 15, 2021 that Flynn was working towards paying off Verity's balance, Compl. ¶ 22; a promise from Verity on March 3, 2021 to pay

---

[2] The Complaint alleges that when Paul Hobbs inquired about Verity's "account balance on April 14, 2021, Paul Hobbs was directed to speak with Molly Jobe—a 'Senior Manager of Restructuring and Dispute Resolution Services' at Cohn Reznick LLP."  Compl. ¶ 21.

the balance due to Winc, *id.* ¶ 34; a payment plan concerning that balance that was formalized on March 8, 2021, *id.*; a statement by Flynn on May 4, 2021 that he was continuing to work on paying Verity's balance due to Paul Hobbs, *id.* ¶ 25; a statement from Flynn on May 28, 2021 that he was close to securing the financing required to pay Verity's debts to Winc, *id.* ¶ 37; a statement, contained in a letter from Rosenthal, that Rosenthal was planning to engage in an Article 9 sale, *id.* ¶¶ 23, 35; a statement from Jobe to Winc on June 3, 2021 that Verity had gone out of business and had no assets that could be used to pay creditors, *id.* ¶ 38; a statement from Jobe to Paul Hobbs on August 4, 2021 that Verity's assets had been subject to an Article 9 foreclosure sale, *id.* ¶ 26; and a statement from Kevin Gluntz, Trinity's attorney, that Trinity had purchased Verity's assets in an Article 9 foreclosure sale, *id.* ¶ 49.   In some cases, the Complaint's allegations omit information required to identify these statements with particularity.   Rosenthal's letter, for example, was allegedly sent "at the same time" as both Jobe's April 15, 2021 statement to Paul Hobbs, *id.* ¶¶ 22-23, and Verity's statements to Winc in early March, *id.* ¶¶ 34-35.   But given the considerable ambiguity as to when during this month-and-a-half period the letter was sent, these allegations hardly identify the letter with particularity, especially since they do not even allege which individual signed it, *id.* ¶¶ 23, 35.   Similarly, the bare allegation that "on March 4 . . . Verity promised to pay," *id.* ¶ 34, omits information—such as the means or location of communication and the speaker of the promise—that would be required to identify it with particularity.   Other statements, however, are pled so as to satisfy the requirements of Rule 9(b).

Nonetheless, even assuming that all such statements were identified with particularity, the predicate acts are not adequately pled.   First, the alleged misrepresentations are inadequate to support the claim that Defendants engaged in mail or wire fraud with respect to Paul Hobbs, because none of the alleged misrepresentations made to Paul Hobbs were "material to the harm caused to the victim."   *Moore*, 189 F.3d at 169.   Paul Hobbs alleges that it was defrauded when it

sold wine to Verity.  The "scheme or artifice to defraud Plaintiffs or to obtain valuable commodities from Plaintiffs by false or fraudulent pretenses, representations, or promises," as alleged, had as its objective "to obtain wine essentially free of charge which they can resell on the retail market for at most 100% profit."  Compl. ¶¶ 117, 119; *see id.* ¶¶ 61 (referring to "this conspiracy to defraud Paul Hobbs and Winc of its wine"), 115 (alleging that "through their racketeering scheme, [Defendants] would seize the wine and sell it without having paid for it"), 116 (alleging "a conspiracy to take wine without paying for it, while pocketing the proceeds from its resale"), 117 (alleging that "Defendants caused delivery of various documents and things by the U.S. mails or by private or commercial carriers or received such therefrom").

But "[a] misrepresentation is material to a fraud claim only if it is the type of misrepresentation likely to be deemed significant to a reasonable person considering whether to enter into the transaction."  *Moore*, 189 F.3d at 170.  None of the misrepresentations alleged in the Complaint would be significant to a reasonable person considering whether to enter into Paul Hobbs's wine sales to Verity, however, because—at least according to the allegations in the Complaint—each misrepresentation occurred after those sales had already been completed.[3]  The alleged misrepresentations were uttered to Paul Hobbs following its inquiry about Verity's outstanding balance, which occurred only after it had already sold wine to Verity.  Compl. ¶¶ 18, 21.  And the Complaint does not allege that Defendants' scheme contemplated or involved any subsequent sale of wine by Paul Hobbs that Defendants sought to induce through their alleged misrepresentation.  Considering only the alleged misrepresentations that are specifically identified, then, the Complaint describes a scheme in which Defendants first caused Verity to purchase wine from Paul Hobbs, and only later misrepresented whether Verity intended to pay the balance due

---

[3] Because the Complaint alleges that fraudulent misstatements were made to Winc in March 2021, Compl. ¶ 34, while Winc's sales to Verity continued through April 2021, *id.* ¶ 33, this particular pleading deficiency does not affect Defendants' alleged fraud against Winc.

for those purchases.  Because a reasonable person could not have based a decision to sell wine to Verity on misrepresentations that at the time had not even been made yet, the reasonable person certainly would not have deemed them significant in making that decision.

Second, the Complaint fails to "allege facts that give rise to a strong inference of fraudulent intent" on the part of the Moving Defendants.[4]  *Moore*, 189 F.3d at 173 (citation omitted).  In general, that "requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *accord S.Q.K.F.C.*, 84 F.3d at 634 (applying *Shields* to evaluate a complaint alleging a RICO violation based on predicate acts of mail and wire fraud).  Under either of these two approaches, the allegations in the Complaint cannot justify a strong inference of fraudulent intent with respect to the Moving Defendants, *i.e.*, Rosenthal, Trinity, or Bell.

Motive to commit fraud "would entail concrete benefits that could be realized by one or more of the false statements . . . alleged."  *Shields*, 25 F.3d at 1130.  For the same reason that the alleged misrepresentations were not material to Paul Hobbs's decision to sell wine to Verity, the facts alleged in the Complaint cannot demonstrate motive with respect to the alleged scheme to defraud Paul Hobbs, because the concrete benefits of that scheme—namely, the acquisition of wine without payment—would not be "*realized by*," *id.* (emphasis added), any of the alleged misrepresentations identified in the Complaint.  When the alleged misrepresentations were made

---

[4] Other infirmities in the Complaint—*i.e.*, the just-discussed failure to identify a material misrepresentation involving Paul Hobbs, as well as the failure to adequately plead a RICO enterprise, *see infra* III.A.1.b, a pattern of racketeering activity, *see infra* III.A.1.c, and a RICO conspiracy, *see infra* III.A.2—apply to all Defendants based on the face of the Complaint. Similarly, as discussed shortly, the Complaint does not allege a motive to defraud Paul Hobbs as to all Defendants.  The Court does not otherwise reach whether the Complaint sufficiently alleges fraudulent intent as to Verity and Flynn.

to Paul Hobbs, it had already sold its wine to Verity, and no further conduct by it was required to complete the remaining step in Defendants' alleged scheme to defraud—namely, the allegedly improper Article 9 foreclosure in which Rosenthal transferred to Trinity wine formerly owned by Verity.  Because by the time the alleged misrepresentations were made, the benefits of the scheme to defraud had been attained regardless of whether Paul Hobbs engaged in any further conduct, the allegations in the Complaint do not show that Defendants received a concrete benefit "that could be realized by" misrepresentations to Paul Hobbs.  Instead, any benefit Defendants received would have been realized regardless of the alleged misrepresentations.  And if those benefits would have been realized regardless of the alleged misrepresentations, the possibility of securing those benefits could not plausibly have provided Defendants with a motive for committing fraud.  Thus, the Complaint does not allege a motive from which a strong inference might be drawn that Defendants intended to defraud Paul Hobbs through the alleged misrepresentations identified in the Complaint.

For a further reason, the allegations pled in the Complaint would be inadequate to demonstrate the existence of a fraudulent motive for Rosenthal in particular.  While all other Defendants allegedly benefited from the scheme to defraud because it enabled Trinity—and, through it, Bell and Flynn, who allegedly owned both Trinity and Verity—to acquire Plaintiffs' wine without payment, Rosenthal instead allegedly "was induced to participate in this scheme for pecuniary benefit."  Compl. ¶ 64.  However, the Complaint does not plead any facts demonstrating that Rosenthal received a pecuniary benefit as a result of the scheme; instead, the allegation of pecuniary benefit is pled merely "[u]pon information and belief."  *Id.*  This entirely unsupported allegation of motive is inadequate to sustain a strong inference of Rosenthal's fraudulent intent. As a general matter, "Rule 9(b) pleadings cannot be based upon information and belief." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  While there is an exception that allows fraud to be alleged upon information and belief "as to facts peculiarly

14

within the opposing party's knowledge," a category that plausibly could encompass nonpublic payments among Defendants, such allegations "must be accompanied by a statement of the facts upon which the belief is based." *Id.* Yet Plaintiffs have not pled any facts supporting their belief that Rosenthal received a pecuniary benefit in exchange for its participation in the scheme. Thus, even had the Complaint adequately alleged that the Trinity Defendants, Verity, and Flynn received concrete benefits *by* making misrepresentations to Paul Hobbs, it has not adequately alleged that Rosenthal received concrete benefits from the scheme allegedly perpetrated either against Paul Hobbs or against Winc. Consequently, the Complaint has not adequately pled a motive from which Rosenthal's fraudulent intent might be inferred.

In addition to alleging facts showing a defendant's motive to commit fraud, the first *Shields* approach requires a complaint to "allege[] facts showing a clear opportunity to commit fraud" in order to adequately plead that the defendant possessed fraudulent intent. *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 185 (2d Cir. 1995). The opportunity to commit fraud "would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Shields*, 25 F.3d at 1130. And courts typically find that standard met when the means necessary to successfully execute the fraud lay within the defendant's factual or legal control: "the usual finding of clear opportunity arises when the defendant is already well positioned to carry out the fraudulent transaction, such as when he possesses the necessary trust and authority." *Powers*, 57 F.3d at 185. For example, courts in this Circuit have found that corporate officers or directors possessed the clear opportunity to commit frauds involving their corporations. *Id.* (collecting cases). But the scheme to defraud alleged in the Complaint did not simply involve Defendants' exercise of trust or authority already within their possession; instead, it required them to transfer assets from Verity to Rosenthal to Trinity through a fraudulent Article 9 foreclosure, such that Verity's creditors would be prevented from recovering against those assets, and further in a manner that would result in Rosenthal

15

receiving a larger payment than it would have received simply by conducting a normal Article 9 foreclosure following Verity's default.  Compl. ¶ 63 ("Defendants Flynn and Bell conspired with Defendant Rosenthal & Rosenthal to see that Defendant Verity's purchases would be possessed by Defendant Rosenthal & Rosenthal under a sham UCC Art. 9 foreclosure, and to ultimately result in the return of the wine to Defendant Verity under a different name, all for little or no cost and to avoid paying for the wine it had purchased.").  Thus, to show a clear opportunity to commit the alleged fraud, the facts alleged in the Complaint must identify the means Defendants employed to transfer Verity's assets to Trinity through Rosenthal via a sham Article 9 foreclosure, such that a likely prospect existed of realizing the concrete benefits of Defendants' fraud—in particular, of removing the wine beyond the reach of Verity's creditors—through those elaborate means.

The Complaint, however, contains no factual allegations showing either how Defendants transferred the wine from Verity to Trinity in a sham foreclosure, with Trinity and its owners having a likely prospect of ultimately retaining possession of that wine without having to compensate Plaintiffs, or how the non-Rosenthal Defendants were able to provide Rosenthal with a higher payment to conduct a sham foreclosure than Rosenthal would have received in a legitimate foreclosure sale.  Indeed, given the Complaint's allegations that Verity transferred its wine to Rosenthal for the explicit purpose of avoiding obligations, Compl. ¶ 60, the transfer would appear on its face to be voidable under standard principles of fraudulent transfer law.  *See, e.g.*, Uniform Voidable Transfers Act § 4(a) (Nat'l Conf. of Comm'rs on Unif. State L. 2014) ("A transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . . .").  And far from clarifying how this seemingly voidable transfer could have successfully removed Verity's wine from the reach of its creditors, the Complaint does not even make allegations as to the method of transferring Verity's wine from its possession, beyond the

16

conclusory allegation that "[u]pon further information and belief, Trinity and Rosenthal did not take possession of the wine as part of a legitimate and proper Article 9 foreclosure, despite representations that such a proper foreclosure had taken place." Compl. ¶ 57.  Even were this allegation to fall within the Rule 9(b) exception permitting facts peculiarly within a defendant's knowledge to be plead only on information and belief, *DiVittorio*, 822 F.2d at 1247, use of that exception "must be accompanied by a statement of the facts upon which the belief is based," *id.*, and no such statement accompanies Plaintiffs' allegation here.  Indeed, the Complaint identifies no basis whatsoever for thinking that the transfer of assets from Verity to Rosenthal to Trinity was not a perfectly ordinary Article 9 foreclosure carried out by Verity's secured lender following Verity's default.[5]

Without any factual allegations showing both the means that Defendants employed to transfer Verity's assets and the likelihood that those means would realize the concrete benefit of removing those assets from the reach of Verity's creditors, the Complaint's mere outline of a plot to somehow transfer wine does not allege a clear opportunity to commit fraud.  *Cf. Powers*, 57 F.3d at 185 ("When courts speak of 'clear opportunity' to commit fraud, they do not envision the kind of elaborate plot that is alleged to have unfolded in this case.").  And because the allegations in the Complaint fail to show that Defendants possessed a clear opportunity to successfully defraud Plaintiffs of their wine, those allegations cannot sustain the "strong inference of fraudulent intent" necessary for the Complaint to satisfy Rule 9(b)'s heightened pleading standards.  If a complaint alleges that defendants made misrepresentations that were likely to realize certain concrete

---

[5] Of course, the existence of a legal method of removing assets beyond the reach of Verity's creditors—namely, a valid foreclosure sale pursuant to Article 9—does not demonstrate a clear opportunity to realize that benefit through the scheme to defraud alleged in the Complaint, nor does the mere allegation that the wine was removed beyond the reach of those creditors, *e.g.* Compl. ¶ 110, suffice to show clear opportunity to commit fraud, given that the legal method of transfer existed.

benefits, it is reasonable to infer that those defendants intended to make those misrepresentations as part of a scheme to receive those benefits. But because ordinarily individuals do not intentionally pursue schemes to defraud that are unlikely to succeed, a complaint that merely describes false statements, without more, cannot sustain the inference that the falsity was intentional rather than accidental when the defendants had no clear opportunity to secure the benefits they desired through those false statements. To be sure, individuals do sometimes engage in frauds unlikely to succeed. But given the lower intrinsic plausibility that individuals would intentionally pursue a futile scheme to defraud, a complaint that fails to set forth a defendant's clear opportunity to realize benefits through the alleged false statements must advance further allegations sufficient to make plausible that the false statements were made with fraudulent intent.

Thus, under *Shields*, allegations demonstrating a defendant's motive and clear opportunity to commit fraud are not the sole method by which a complaint may adequately plead fraudulent intent. In addition, "it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Id.* at 184 (internal quotation marks omitted). But the Complaint fails to allege circumstances indicating that the Moving Defendants were conscious of the allegedly fraudulent nature of their conduct. As to Rosenthal, the Complaint alleges that Rosenthal sent a letter communicating its intent, as secured lender, to foreclose on its collateral with Verity, Compl. ¶¶ 23, 35; that it purported to take legal possession of the wine, *id.* ¶ 45; and that it then transferred ownership of the wine to Trinity, *id.* ¶ 46. Given that this conduct is essentially identical to the conduct expected of any secured lender once its loans have gone into default, these allegations do not "identify[] circumstances indicating conscious behavior," particularly since "[w]here motive is not apparent . . . the strength of the circumstantial allegations must be correspondingly greater." *Powers*, 57 F.3d at 184 (alteration in original) (internal quotation marks omitted). Similarly, as to

Trinity, the Complaint alleges only that Trinity took ownership from Rosenthal of wine previously owned by Verity, even though Verity and Trinity largely shared ownership and had similar corporate structures.  Compl. ¶¶ 46, 48, 55-56.  But because Verity's owners could well have used new capital invested in Trinity to purchase Verity's former assets out of foreclosure after Verity was simply unable to pay its debts, these circumstantial allegations are insufficient to establish that Trinity consciously engaged in fraudulent conduct.  And, lastly, because the Complaint contains no specific circumstantial allegations whatsoever as to Bell, it obviously cannot establish Bell's fraudulent intent circumstantially.

In short, the Complaint fails to identify any misrepresentation that was material with respect to Paul Hobbs's wine sales to Verity, and it fails to allege facts from which a strong inference could be drawn that any Moving Defendant acted with fraudulent intent.  The Complaint therefore has not adequately pled that the Moving Defendants committed wire or mail fraud.  And because the Complaint identifies mail and wire fraud as the predicate acts forming the basis for the Moving Defendants' RICO liability, *id.* ¶ 112, Plaintiffs' failure to adequately plead mail and wire fraud renders their section 1962(c) claim inadequately pled, as well.

### b. Enterprise

RICO prohibits the use of racketeering activity "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs."  18 U.S.C. § 1962(c).  Consequently, to state a claim for a RICO violation, a complaint "must allege . . . the existence of . . . an 'enterprise.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  An "enterprise," in turn, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Thus, a well-pled RICO complaint must allege the existence of such a legal entity or association-in-fact. The enterprise alleged to exist, furthermore, must not overlap with two other elements of a well-

pled RICO violation.   First, the enterprise must be distinct from the individuals named as defendants in the complaint.  *Cedric Kushner Promotions*, 533 U.S. at 161 ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.").  This principle requires "some distinctness between the RICO defendant and the RICO enterprise."  *Id.* at 162 (internal quotation marks omitted).  Second, the enterprise must exist separately from the defendants' alleged racketeering activity.  *United States v. Turkette*, 452 U.S. 576, 583 (1981) ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.");[6] *D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) ("The enterprise must also exist 'separate and apart from the pattern of activity in which it engages.'" (quoting *Turkette*, 452 U.S. at 583)); *First Cap. Asset Mgmt.*, 385 F.3d at 172 ("The enterprise must be separate from the pattern of racketeering activity . . . .").  Thus, a complaint inadequately pleads a section 1962(c) violation if its "allegations impermissibly conflate the alleged RICO enterprise with the alleged pattern of racketeering activity."  *Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335 at *2 (2d Cir. Oct. 31, 2022).

Because the Complaint fails to allege the existence of an enterprise that is both distinct from each Defendant and separate from their alleged pattern of racketeering activity, it fails to adequately allege the existence of a RICO enterprise.  To be sure, the Complaint obviously does allege the existence of three legal entities—namely, Verity, Trinity, and Rosenthal—that therefore each satisfy the definition of an "enterprise" in section 1961(4).  But because Verity, Trinity, and Rosenthal are each Defendants in this case, the distinctiveness requirement precludes any of them

---

[6] Because "the substantive standards as to what must be proven in a criminal RICO prosecution also govern civil RICO actions," *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.), *vacated on other grounds*, 492 U.S. 914, *adhered to on remand*, 893 F.2d 1433 (2d Cir.), *cert. denied*, 493 U.S. 992 (1989), opinions interpreting RICO in the criminal context set forth standards that also govern civil RICO cases, such as this one.

from serving as the RICO enterprise required for the Complaint to state a claim. Instead, then, Plaintiffs argue that the Complaint satisfies the enterprise requirement by alleging the existence of an association-in-fact comprised of all five Defendants. Pl. Opp. to Rosenthal at 8 ("The Complaint alleges three entities and two individuals working together to perpetuate numerous frauds against Plaintiffs."); *accord* Pl. Opp. to Trinity at 7-8. And an association of individuals and legal entities certainly can satisfy the definition of "enterprise" set forth in section 1961(4), even if that association is not itself a legal entity. 18 U.S.C. § 1961(4) ("'[E]nterprise' includes . . . any union or group of individuals associated in fact although not a legal entity."). Nonetheless, the Complaint's allegations as to that enterprise are insufficiently separate from the pattern of racketeering activity alleged to adequately plead the existence of a RICO enterprise.

An association-in-fact, the Supreme Court has explained, is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583. Such a group must be an "ongoing organization" whose "associates function as a continuing unit." *Id.* Thus, it "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Complaint, however, omits any allegations that clearly identify any of these structural features possessed by the alleged RICO association-in-fact. The paragraph of the Complaint beginning with "The Enterprise:"—in which one would expect the existence of the RICO enterprise to be alleged—instead consists entirely of a summary of the racketeering activity allegedly performed by Defendants:

> Defendants acted in a concerted effort to affect interstate commerce. Defendants worked together to purchase wine from producers and importers, with the intent not to pay for the wine. Defendants did this by purchasing the wine from importers and producers such as Plaintiffs Paul Hobbs and Winc. Verity, the purchaser, then transferred the wine to Defendant Rosenthal & Rosenthal, Inc. (purportedly in satisfaction of a secured loan) who would subsequently transfer the same wine back to another business, Defendant Trinity Beverage Group LLC, owned and operated by the same individuals, Defendants Flynn and Bell, who operated Defendant

Verity Wines LLC.  Defendants used this same scheme to defraud numerous wine companies—including Plaintiffs—and transfer millions of dollars of inventory to themselves free of charge.

Compl. ¶ 110.  These allegations, which describe the scheme to defraud at the heart of Defendants' alleged acts of mail and wire fraud, "impermissibly conflate the alleged RICO enterprise with the alleged pattern of racketeering activity," *Jordan*, 2022 WL 16544335 at *2:  they do not identify the structural features allegedly possessed by Defendants' association-in-fact but instead simply identify the racketeering activity Defendants allegedly engaged in.  *Cf. Turkette*, 452 U.S. at 583 ("The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.  The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute.").  And simply alleging the occurrence of racketeering activity does not on its own adequately allege the existence of an enterprise, as required for a violation of section 1962(c).  *See D. Penguin Bros.*, 587 F. App'x at 668 ("RICO is not violated every time two or more individuals commit one of the predicate crimes listed in the statute." (citation and internal quotation marks omitted)).

The allegations contained in the remainder of the Complaint, in turn, "fall short of supporting a plausible inference that an association-in-fact enterprise existed."  *Id.*  Indeed, the Complaint contains almost no allegations as to the structure of the alleged association among Defendants save for the bare assertion that "[a]s principals at Defendant Verity, Defendants Hill Flynn and Mike Bell were the masterminds of this conspiracy to defraud Paul Hobbs and Winc of its wine."  Compl. ¶ 61.  This allegation, however, is "too conclusory to plausibly allege the existence of an association-in-fact enterprise."  *Jordan*, 2022 WL 16544335, at *2 (rejecting a complaint as inadequately pled when it alleged only that the defendants "were organized in a consensual decision-making manner").  And because no other allegation in the Complaint identifies the purpose around which the association-in-fact was organized, the associations among

Defendants through which they carried forth that purpose, or the period of time during which Defendants "function[ed] as a continuing unit," *Turkette*, 452 U.S. at 583, the Complaint does not permit "the court to draw the reasonable inference that" Defendants violated RICO through their control of or participation in an association-in-fact enterprise, *Iqbal*, 556 U.S. at 678.

To be sure, a complaint may state a claim for violating section 1962(c) even if "the enterprise and predicate acts are functionally equivalent." *United States v. Ferguson*, 758 F.2d 843, 853 (2d Cir. 1985) (brackets, citation, and internal quotation marks omitted). The Supreme Court has clearly rejected the notion that a RICO enterprise must have specific structural features unrelated to the pattern of racketeering activity, *see Boyle*, 556 U.S. 938; *Turkette*, 452 U.S. 576, and it has explained that "the proof used to establish [the separate enterprise and pattern of racketeering activity] elements may in particular cases coalesce," *Turkette*, 452 U.S. at 583. Nonetheless, "[t]he existence of an enterprise at all times remains a separate element which must be proved." *Id.* And since Plaintiffs must prove the existence of such an enterprise to secure the relief they seek, the Complaint must adequately allege the structural features required for an enterprise to exist so as to provide Defendants with notice of the factual allegations on which Plaintiffs rely.

### c. Pattern

To violate RICO, an individual must do more than merely engage in racketeering activity; rather, the statute requires a "*pattern* of racketeering activity." 18 U.S.C. § 1962(c) (emphasis added). And RICO defines a pattern of racketeering activity to require at least two acts of racketeering activity occurring within a ten-year period. *Id.* § 1961(5). As discussed, the Complaint inadequately pleads each racketeering act that the Moving Defendants allegedly committed. *See supra* III.A.1. But assuming *arguendo* that those acts were adequately pled, they were alleged to have occurred within a ten-year period. Nonetheless, the Supreme Court has

imposed additional requirements that must be met for racketeering activity to constitute a "pattern": "while two acts are necessary, they may not be sufficient." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) (quoting *Sedima, S.P.R.L.*, 473 U.S. at 496 n.14). A plaintiff additionally "must show that the racketeering predicates . . . amount to or pose a threat of continued criminal activity." *Id.* at 239 (emphasis in original). In turn, "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Consequently, "a plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time)." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (internal quotation marks omitted). Thus, the Complaint could adequately plead a pattern of racketeering activity either by alleging that Defendants engaged in repeated racketeering activity extending over a substantial period of time or by alleging that they engaged in racketeering activity that by its nature projects into the future with a threat of repetition. Because the Complaint adequately alleges neither, it would fail to state a RICO violation even had it adequately pled the offenses of mail and wire fraud as predicate acts and adequately pled the existence of a RICO enterprise.

For a complaint to adequately allege closed-ended continuity, the predicate acts pled must extend over "a substantial period of time." *GICC Cap. Corp.*, 67 F.3d at 466. Although no bright-line rule defines which periods of time are "substantial," "[p]redicate acts extending over a few weeks or months . . . do not satisfy this requirement." *H.J. Inc.*, 492 U.S. at 242. Indeed, the Second Circuit "generally requires that the crimes extend over at least two years." *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) (citation omitted). The allegations in the Complaint plainly fail to meet this threshold. The Complaint alleges two occasions of mail and wire fraud: Defendants

allegedly defrauded Paul Hobbs of its wine between the January 2021 sale of wine to Verity, Compl. ¶ 18, and the May 2021 transfer of Verity's assets, through Rosenthal, to Trinity, *id.* ¶¶ 45-46, and Defendants allegedly defrauded Winc of its wine between the early 2021 sales of wine to Verity, *id.* ¶ 33, and the May 2021 transfer of Verity's assets, through Rosenthal, to Trinity, *id.* ¶¶ 45-46. Thus, the predicate acts allegedly occurred over a period of five months, which is well below the two years ordinarily required by the Second Circuit for closed-ended continuity. *See Reich*, 858 F.3d at 60; *Spool*, 520 F.3d at 184 (finding sixteen months insufficient for closed-ended continuity); *see also H.J. Inc.*, 492 U.S. at 242 (holding "[p]redicate acts extending over a few . . . months" not sufficient for closed-ended continuity). Thus, the racketeering activity pled in the Complaint does not satisfy the requirements for closed-ended continuity.

In the Complaint, Plaintiffs claim that they have satisfied the continuity requirement because "Defendants' violations of state and federal law, as set forth herein . . . constituted a course of conduct spanning a period from 2019 to the present," which would satisfy the two-year requirement. *See* Compl. ¶ 121; *see also* Pl. Opp. to Rosenthal at 7; Pl. Opp. to Trinity at 7. But "the duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999). Thus, to claim that "Defendants' violations of state and federal law . . . constituted a course of conduct spanning a period from 2019 to the present," the Complaint must allege the commission of predicate acts from 2019 through 2021. And the Complaint fails utterly to do so. The sole mentions in the Complaint of times prior to 2021 are bare assertions—unbacked by any factual allegations identifying specific predicate acts in any way—that Defendants' conduct began in 2019. Compl. ¶¶ 113, 121, 127. The Complaint does further allege that, "[u]pon information and belief, this same scheme has been perpetrated against numerous wine importers and producers." Compl. ¶ 66. But that allegation, which clearly fails to adequately plead an act of

25

mail or wire fraud, cannot be considered in evaluating closed-ended continuity, which must instead be evaluated based only on the predicate acts that are adequately pled in the complaint.  *See GICC Cap. Corp.*, 67 F.3d at 467 (excluding inadequately pled predicate acts in evaluating the duration of the racketeering activity pled in a complaint).  Without identifying and adequately pleading further predicate acts performed in 2019 or before, the Complaint does not adequately plead that Defendants' racketeering activity possessed closed-ended continuity.

Alternatively, a complaint can allege a pattern of racketeering activity by satisfying the requirements for open-ended continuity.  "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed."  *Cofacredit*, 187 F.3d at 242.  "To determine whether a threat of 'open-ended' continuity exists, a court must examine the nature of either:  (1) the predicate acts alleged; or (2) the enterprise at whose behest the predicate acts were performed."  *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).  Furthermore, as with closed-ended continuity, open-ended continuity must be evaluated based only on the predicate acts adequately pled in the complaint.  *See First Cap. Asset Mgmt.*, 385 F.3d at 178-180 (excluding inadequately pled predicate acts before evaluating open-ended continuity).  Thus, in analyzing whether the Complaint satisfies open-ended continuity, the Court will not consider the allegation that, "[u]pon information and belief, this same scheme has been perpetrated against numerous wine importers and producers," Compl. ¶ 66, which fails to adequately plead any predicate act, and will instead consider whether the acts of mail and wire fraud allegedly committed against Plaintiffs in 2021— had they been adequately pled—would establish a threat of continuing criminal activity.

Beginning with the latter method of establishing open-ended continuity, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business."  *H.J. Inc.*, 492 U.S. at 242.  That showing must be made

differently depending on the type of entity involved.  In the case of a legitimate ongoing entity, continuity may be shown if the "predicates are a regular way of conducting defendant's ongoing legitimate business . . . or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'"  *Id.*  Alternatively, "the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes."  *Id.*  The allegations in the Complaint, however, are insufficient to establish a threat of continuing criminal activity under either theory.  First, the Complaint fails to establish a threat of continuing criminal activity based on allegations concerning the nature of some relevant entity.  Nothing suggests that when foreclosing on its debtors' collateral, Rosenthal ordinarily employs the type of sham foreclosure sale alleged to have occurred in this case.  Furthermore, Plaintiffs' allegations that they had sold wine to Verity for the better part of the 2010s, Compl. ¶¶ 16, 31, suggest, if anything, that Verity, Flynn, and Bell regularly operated their business by paying for the wine they purchased, not that they regularly operated it by acquiring wine without payment through sham foreclosure sales.  And there were no allegations of conduct by Trinity prior to taking ownership of the wine at issue in this case.  Thus, the Complaint fails to establish that the predicate acts it alleges constituted the "regular way" of conducting Defendants' wine-distribution or secured-lending businesses.  And while a long-term association surely could exist for the criminal purpose of fraudulently acquiring wine without payment from distributors and importers, the Complaint, which does not even adequately plead the existence of a RICO enterprise, likewise fails the more stringent test of adequately alleging the existence of a long-term association devoted to criminal purposes that was responsible for the predicate acts of mail and wire fraud identified in the Complaint.  While the very existence of "an enterprise whose business is racketeering activity," *GICC Cap. Corp.*, 67 F.3d at 466, might *ipso facto* establish a threat of

continuing criminal activity, Plaintiffs have not adequately alleged the existence of such an enterprise.

Alternatively, certain predicate acts by their very nature indicate a risk of recurrence. Sometimes, that risk arises from the type of predicate act that was alleged.  For example, if "the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established." *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995).  By contrast, "in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from conduct that extended over even longer periods." *Id.*  On other occasions, courts have evaluated whether a threat of continuing criminal activity arises based not on the general type of predicate act that was alleged, but rather on specific details of the defendants' alleged conduct.  The Supreme Court, for example, has explained that an extortion scheme to collect monthly protection payments from neighborhood stores may reasonably be expected to continue into the future even once only the first one or two months of payments have been collected.  *H.J. Inc.*, 492 U.S. at 242.  Conversely, the Second Circuit has held that a threat of continued criminal activity cannot be established when "the scheme was *inherently* terminable," *GICC Cap. Corp.*, 67 F.3d at 466, as when the scheme involved the looting of a particular corporation expected to run out of assets, *id.*, or when it involved the fraudulent conveyance of assets prior to a particular declaration of bankruptcy, *First Cap. Asset Mgmt.*, 385 F.3d at 180-81.

With respect to both the general category of racketeering activity and the specific details of the conduct alleged, the predicate acts alleged in the Complaint do not establish a threat of

continuing criminal activity.  First, inasmuch as wine distribution is generally a lawful business, the predicate acts alleged in the Complaint, like other alleged "frauds in the sale of property," were committed "in furtherance of endeavors that are not inherently unlawful."  *Aulicino*, 44 F.3d at 1111.  Second, given their precise details, the predicate acts alleged in the Complaint were "inherently terminable," *GICC Cap. Corp.*, 67 F.3d at 466, and thus cannot give rise to a threat of continuing criminal activity.  Indeed, Defendants' alleged racketeering acts are remarkably similar to the alleged fraud in *First Capital Asset Management*, which the Second Circuit explicitly held to lack open-ended continuity.  In that case, the only predicate acts adequately pled in the complaint concerned the transfer and concealment of assets prior to and during one defendant's bankruptcy, much as Plaintiffs' allegations here concern Defendants' alleged transfer and concealment of Verity's assets prior to and during its default on its debts.  *First Cap. Asset Mgmt.*, 385 F.3d at 180.  As the Second Circuit explained, a scheme to strip assets from an entity prior to its default so as to shield those assets from creditors will naturally terminate once default occurs, since at that point creditors may exercise their remedies against whatever assets remain:  "Once [the defendant] had fraudulently conveyed his assets, which he allegedly accomplished . . . when he filed for bankruptcy, the scheme essentially came to its conclusion."  *Id.* at 181.  Likewise, once Verity had gone into default and Rosenthal had conducted the allegedly sham Article 9 foreclosure, Defendants' scheme came to its conclusion:  there was no risk that Defendants would continue to strip assets from Verity once Verity no longer possessed any assets to strip.  *Cf. GICC Cap. Corp.*, 67 F.3d at 466 ("It defies logic to suggest that a threat of continued looting activity exists when . . . there is nothing left to loot.").  Because the particular scheme alleged in the Complaint required Verity first to exist as a solvent entity in order to initially take ownership of wine, and only then to go into default so that the wine might be seized by Rosenthal, that scheme terminated

naturally once Rosenthal seized the wine.  Consequently, the nature of the predicate acts alleged cannot establish open-ended continuity.

Finally, "[w]here the nature of conduct or the enterprise does not by itself suggest that the racketeering acts will continue, courts must look to other external factors."  *Id.*  For example, a complaint might allege particular facts to support the inference that the defendants will likely engage in further racketeering activity in the future.  *Id.* (collecting cases).  But the Complaint contains no additional allegations from which to infer the risk of further racketeering activity. Indeed, Plaintiffs' own briefing does not even claim that the Complaint actually establishes the threat of continued criminal activity, instead arguing only that "it is unclear whether Defendants intend to consider perpetrating this fraudulent scheme on more unwitting victims."  Pl. Opp. to Rosenthal at 7; *accord* Pl. Opp. to Trinity at 7.  Consequently, the Complaint also cannot establish open-ended continuity through its allegations concerning other external factors.  And because the allegations in the Complaint satisfy the requirements of neither open-ended nor closed-ended continuity, the Complaint fails to adequately plead that Defendants engaged in a pattern of racketeering activity, as required to state a claim for a violation of section 1962(c).

### 2. Section 1962(d)

RICO prohibits persons not only from engaging in racketeering themselves but further from "conspir[ing] to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  Count VIII of the Complaint alleges that each Defendant violated section 1962(d) by conspiring to commit the subsection 1962(c) violation alleged in Count VII.  Compl. ¶ 126.  The Moving Defendants argue that the Complaint fails to state a claim for a RICO conspiracy for two reasons.  First, the Complaint does not adequately plead the existence of an agreement among Defendants, as it must to state a claim for a RICO conspiracy.  Trinity Br. at 16-17; Rosenthal Br. at 14.  Second, because Defendants' alleged conduct did not in fact violate

subsection 1962(c), any agreement to perform that conduct—even were it adequately pled—would not constitute a conspiracy to violate subsection 1962(c).  Trinity Br. at 15-16; Rosenthal Br. at 13-14.  The Court agrees:  each of these two reasons requires Count VIII to be dismissed.

First, as a general matter, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense."  *Salinas v. United States*, 522 U.S. 52, 65 (1997).  Under this principle, a defendant cannot have conspired to violate RICO unless the conduct agreed to would, in fact, constitute a substantive RICO violation if carried out.  *See United States v. Applins*, 637 F.3d 59, 74 (2d Cir. 2011) ("[F]or purposes of establishing a RICO conspiracy, the government is required to prove only the existence of an agreement to violate RICO's substantive provisions." (brackets, emphasis, and internal quotation marks omitted)).  For that reason, courts ordinarily dismiss any accompanying counts alleging a RICO conspiracy in violation of subsection 1962(d) once they have dismissed substantive counts in the same complaint alleging a violation of subsections 1962(a), (b), or (c), unless the complaint pleads an agreement to perform additional acts beyond the ones actually performed that failed to violate RICO.  *See, e.g.*, *Williams*, 889 F.3d at 126 ("The alleged conspiracy involved an agreement to commit the same substantive RICO violations we have deemed insufficiently pled, and the plaintiffs have not alleged any further acts that, if carried out, would have satisfied RICO's requirement of a pattern of racketeering.  The plaintiffs therefore failed to plead the necessary agreement to violate RICO's substantive provisions." (citation omitted)); *Cofacredit*, 187 F.3d at 245 (holding that section 1962(d) was not violated because the predicate acts that the defendants agreed to perform did not display "continuity sufficient to establish a pattern of racketeering activity"); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), *vacated on other grounds*, 525

U.S. 128 (1998).  Thus, since the Complaint does not predicate its subsection 1962(d) count on an

agreement to engage in any conduct other than the acts alleged to violate subsection 1962(c), the

Court's dismissal of the substantive count requires dismissal of the conspiracy count as well.

Furthermore, even had Defendants violated subsection 1962(c), the allegations in the

Complaint would still be insufficient to plead a violation of subsection 1962(d).  "To establish the

existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate

RICO's substantive provisions."  *Cofacredit*, 187 F.3d at 244 (internal quotation marks and

citation omitted).  And "[b]ecause the core of a RICO civil conspiracy is an agreement to commit

predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such

an agreement."  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).  Under

*Iqbal*, a complaint cannot survive a motion to dismiss if "the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct."  556 U.S. at 679.  For that reason,

courts ordinarily dismiss complaints that contain only conclusory, boilerplate allegations as to the

existence of the relevant agreement.  *See, e.g.*, *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F.

Supp. 3d 525, 545 (S.D.N.Y. 2014) (dismissing a RICO conspiracy count when "[o]ther than one

conclusory allegation that the defendants 'agreed' to commit the violations, the plaintiffs have

alleged no facts to show specifically that the defendants had any 'meeting of the minds' in the

alleged violations" (citation omitted)); *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.

Supp. 2d 432, 453 (S.D.N.Y. 2004) ("Conclusory allegations that 'all of the defendants conspired

among themselves to further the scheme to defraud' and 'knowingly and willingly participated in

the conspiracy' are insufficient.").  Plaintiffs' Complaint, similarly, contains only a conclusory,

boilerplate allegation as to the existence of Defendants' alleged agreement to commit a RICO

violation.  Compl. ¶ 126 ("In violation of 18 U.S.C. § 1962(d) Defendants knowingly, willfully,

and unlawfully conspired to facilitate a scheme which included the operation or management of a

RICO enterprise through a pattern of racketeering activity as alleged above."). On its own, without further factual support, this conclusory allegation does not "raise [Plaintiffs'] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Consequently, Count VIII would be inadequately pled, requiring dismissal, even had the Complaint adequately pled a violation of subsection 1962(c).

* * *

Accordingly, the Court grants the Moving Defendants' motions to dismiss Counts VII and VIII of the Complaint.

## B. RICO Claims Against Verity and Flynn

Neither Verity nor Flynn has entered an appearance in this case, and as noted, Plaintiffs have moved for a default judgment against them. Dkt. 43. Consequently, neither Verity nor Flynn has moved for dismissal of Plaintiffs' RICO claims as pled against them. Nonetheless, "a district court has the power to dismiss a complaint *sua sponte* for failure to state a claim upon which relief can be granted . . . where a plaintiff has been given 'an opportunity to be heard.'" *Palkovic v. Johnson*, 150 F. App'x 35, 37 (2d Cir. 2005) (citation omitted) (quoting *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988)). Certainly, Plaintiffs have been given an opportunity to be heard concerning the pleading deficiencies that the Moving Defendants argued—and that the Court has herein agreed—were present in the Complaint. Furthermore, the bulk of those deficiencies do not merely undermine Plaintiffs' RICO claims against the Moving Defendants but rather prevent the Complaint from stating a substantive RICO claim or RICO conspiracy at all. To be sure, because certain elements of Plaintiffs' claims must be established individually against each Defendant— for example, the allegation that each Defendant possessed the fraudulent intent necessary to commit mail or wire fraud—the conclusion that those elements were not adequately pled against the Moving Defendants does not entail that they also were not adequately pled against Verity and

Flynn.  But the Complaint alleges that each Defendant participated in the same RICO enterprise, committed the same two predicate acts of mail and wire fraud, engaged in the same pattern of racketeering activity, and formed part of the same conspiracy to violate RICO.  Thus, and as discussed, the failure to identify a material misrepresentation involving Paul Hobbs, *see supra* III.A.1.a, the failure to adequately plead the existence of a RICO enterprise, *see supra* III.A.1.b, the failure of the alleged predicate acts to constitute a pattern of racketeering activity, *see supra* III.A.1.c, and the failure to adequately allege a conspiracy to violate RICO, *see supra* III.A.2, prevent the Complaint from stating a RICO substantive or conspiracy claim against any Defendant. The Second Circuit has explicitly approved the dismissal of RICO claims against a non-appearing defendant when a complaint's pleading deficiencies, as identified by other defendants, prevent it from stating those claims against any defendant.  *Hecht*, 897 F.2d at 26 n.6.  Consequently, the Court likewise dismisses Counts VII and VIII against Verity and Flynn.

## C.  State Law Claims

Since RICO is a federal statute, Counts VII and VIII of Plaintiffs' Complaint fall within the Court's federal question jurisdiction.  *See* 28 U.S.C. § 1331.  Because the parties are not fully diverse, however—Plaintiffs and Trinity are all citizens of Delaware, *see* Compl. ¶¶ 2-3; Dkt. 29— the Court lacks original jurisdiction over the first six counts of the Complaint.  *See* 28 U.S.C. § 1332.  Instead, this Court's jurisdiction over those counts depends on its jurisdiction over Counts VII and VIII, since "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  Nonetheless, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c).  And as the Supreme Court has explained,

"when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court herein is dismissing Plaintiffs' federal law claims in the early stages of this lawsuit, and Plaintiffs have provided no compelling reason why the Court should not follow the usual practice of declining jurisdiction over the related state law claims. Consequently, Counts I through VI of the Complaint are dismissed without prejudice, and may be re-filed in state court.

### D.  Leave to Amend

Lastly, the Court considers whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiffs have not asked the Court for leave to amend their Complaint. "But even when a party does not ask for leave to amend, the Court may grant leave to amend *sua sponte*." *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (citation and internal quotation marks omitted) (collecting cases). When deciding whether to *sua sponte* grant leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020) (citation omitted). After considering these factors, the Court will grant Plaintiffs leave to file an Amended Complaint, in the event Plaintiffs believe they can plead facts that would adequately state a claim upon which relief may be granted. Plaintiffs have not yet amended their Complaint, and with discovery having not commenced, this case "is still in its infancy, [so] there would be minimal prejudice to Defendant[s]" in granting leave to amend. *Id.* at *10. The Court emphasizes, however, that Plaintiffs should amend only if they are able to resolve the pleading deficiencies outlined in this Opinion and Order.

## IV.  Conclusion

For the reasons stated above, Rosenthal's and the Trinity Defendants' motions to dismiss, Dkts. 27, 30, are granted, and Plaintiffs' motion for default judgment against Verity and Flynn, Dkt. 43, is denied.  Plaintiffs' Complaint is dismissed without prejudice.  Because the Court concludes that oral argument in this case is not necessary, the Moving Defendants' requests for oral argument are denied.  In the event Plaintiffs decide to amend their Complaint, they must file their amended complaint within thirty days of this Opinion and Order.  If Plaintiffs fail to file an amended complaint within thirty days, and do not show good cause to excuse the failure to do so, the Court will dismiss Counts VII and VIII with prejudice and dismiss the remainder of this action without prejudice so that Plaintiffs may re-file their state law claims in state court. The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 27, 30, 32, 33, and 43.

SO ORDERED.

Dated: January 24, 2023
New York, New York

JOHN P. CRONAN
United States District Judge